[See Case No. 13,878.]

## Case No. 13,878.

### THELLUSON v. SMITH.

[Pet. C. C. 195.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1815. [2]

#### UNITED STATES — INSOLVENCY — PREFERENCE — PRIOR JUDGMENTS.

1. Insolvency or inability to pay his debts, by any one who is a debtor to the United States, does not give to the United States a preference, unless the same be accompanied with a voluntary assignment of all the property of the debtor for the benefit of his creditors. Aliter if there be a legal insolvency.

2. The preference given to the United States, in the cases mentioned in the law, supersedes prior judgments upon the estate of the debtor to the United States.

In equity.

WASHINGTON, Circuit Justice. The facts of the case, which the court are now to decide, are as follows: The plaintiffs in this cause, instituted a suit in this court against William

---

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]

[3] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]
[1] [Reported by Richard Peters, Jr., Esq.]
[2] [Affirmed in 2 Wheat. (15 U. S.) 396.]

Crammond, which, by the agreement of the parties and the order of the court, was referred to arbitrators. An award in favour of the plaintiffs was filed, and a judgment, nisi, entered thereon, on the 20th day of May, 1805. Exceptions to the award were filed within the four days, and were, upon argument, overruled on the 15th of May, 1806. On the 22d of May, 1805, Crammond executed a conveyance of all his estate to trustees, for the benefit of his creditors, at which time he was indebted to the United States, on several duty bonds, which became due at different periods subsequent to the 22d May, 1805. On those bonds, as they became due, suits were instituted, judgments obtained, and executions issued; under which, a landed estate, belonging to Crammond, called "Sedgely," was levied upon and sold. The plaintiffs considering this estate bound by their judgments of the 20th of May, 1805; and themselves entitled to be first satisfied out of the same, brought this suit against the marshal, to compel him to pay over to them the proceeds of said sale, or so much thereof, as might be sufficient to satisfy their judgment. The action being considered by all the parties, as an amicable one, in order to try the question of preference claimed by the plaintiffs and by the United States, a certain agreement was made between the parties in order to facilitate the trial of this question. Upon the trial of the cause, the jury found by their verdict, that William Crammond was insolvent on the 20th of May, 1805, but that it was not notoriously known; subject to the opinion of the court, upon the foregoing statement of facts, agreed to by the parties, whether the plaintiff was entitled to recover. The parties have further agreed in writing, that on the 22d of May, 1805, William Crammond was unable to satisfy all his debts, which fact is to be considered, as part of the special verdict.

Two questions have been made and argued by the counsel. 1st. At what time the judgment nisi, on a report of arbitrators, under an order of court, binds the real estate of the defendant? Whether on the day it is rendered, on the quarto die post, if no exceptions be filed, or on the day when the exceptions were overruled, should that be their fate? If the land is bound, from the time the judgment nisi is entered. The 2d question is, whether the United States, notwithstanding, are not entitled to be paid in preference to the judgment creditor? As the opinion of the court is in favour of the defendant upon the second point, it will not be necessary to give any upon the first; and the court is willing to avoid it, since a contrariety of opinions, seems to prevail upon that subject, and it is agreed that the point has never received a judicial decision. The question, whether the preference given to the United States, shall cut out a judgment creditor, prior to the act on which the right of preference can be claimed, appears to be quite new. It did not occur in either of the cases referred to in the argu-

ment. [U. S. v. Fisher] 2 Cranch [6 U. S.] 358; [U. S. v. Hooe] 3 Cranch [7 U. S.] 73. The point decided in those cases was, that a mere state of insolvency, or inability in a public debtor, to pay all his debts, gives no right of preference to the United States; unless it is accompanied by a voluntary assignment of all his property, for the benefit of his creditors. There can be little doubt, but that the word "insolvency," mentioned in the act of 1790 (1 Laws [Folwell's Ed.] 221 [1 Stat. 145]), and repeated in the acts of 1797 (3 Laws [Folwell's Ed.] 423 [1 Stat. 512]) and of 1799 (4 Laws [Folwell's Ed.] 386 [1 Stat. 627]), means a legal insolvency, which, wherever it occurs, will give to the United States this right of preference, as well as in the other specified cases, to which these subsequent laws have extended the cases of insolvency.

In this case, the conveyance by Crammond, on the 22d of May, was of all his property, at which time he was unable to pay all his debts. It is, therefore, a case precisely within the law, and within the principle decided by the above case. But the question still remains to be decided, whether this right of preference, which accrued on the 22d of May, can cut out a prior judgment creditor? To resolve this, the law itself must be referred to. It declares, that in all cases of insolvency, &c., the debts due to the United States shall be first satisfied, and if the assignees of an insolvent debtor shall pay any debt due by the person or estate from whom, or for which they are acting, previous to the debts due to the United States, from such person or estate, being first duly satisfied, they shall become answerable for the same, in their own persons and estates. These expressions are as general, as any that could have been used, and exclude all debts due to individuals, whatever may be their dignity. The assignees are made personally responsible to the United States, if, in a case of insolvency, they pay any debts previous to those due to the United States. The law makes no exception in favour of prior judgment creditors, and no reason has been, or we think can be shown to justify this court in making one. Exceptions there must necessarily be, as to the funds out of which the United States are to be satisfied, but there can be none in relation to the debts due from a debtor of the United States, to other persons. The United States are to be first satisfied: but then it must be out of the debtor's estate; if, therefore, before the right of preference has accrued to the United States, the debtor has made a bona fide conveyance of his property to a third person, or has mortgaged the same to secure a debt; or if his property has been seized under a fieri facias, the property is divested out of the debtor, and cannot be made liable to the preference claimed by the United States. The effect of a judgment, is merely to give to the judgment creditor a lien on the debtor's land, and a preference over all subsequent judgment creditors. But the act of congress de-

feats this preference in favour of the United States, in the cases specified in the 65th section of the act of 1799.

The court is of opinion, that the law is in favour of the defendant.

The plaintiffs excepted to this charge.

A writ of error was prosecuted to the supreme court, where the decision of the circuit court was affirmed; the opinion here stated having been delivered by Mr. Justice Washington, as the opinion of that court. 2 Wheat. [15 U. S.] 396. See the following cases, on the points decided in this case: U. S. v. Hooe, 3 Cranch [7 U. S.] 73; Harrison v. Sterry, 5 Cranch [9 U. S.] 289; Prince v. Bartlett, 8 Cranch [12 U. S.] 431; M'Clean v. Rankin, 3 Johns. 369; Smith v. Tinker, 2 Day, 236.

